UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

GREG LAMBERT,
*Defendant-Appellant.*

No. 02-4496

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

STEVE LAMBERT,
*Defendant-Appellant.*

No. 02-4562

Appeals from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David A. Faber, Chief District Judge.
(CR-01-237)

Submitted: February 27, 2003

Decided: March 13, 2003

Before NIEMEYER and LUTTIG, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed in part and dismissed in part by unpublished per curiam
opinion.

_____

**COUNSEL**

Michael F. Gibson, GIBSON, LEFLER & ASSOCIATES, Princeton, West Virginia; Stanley Selden, SELDEN LAW OFFICES, Beckley, West Virginia, for Appellants. Kasey Warner, United States Attorney, Steven R. Compton, Special Assistant United States Attorney, Charleston, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Steve Lambert pled guilty to conspiracy to distribute oxycodone, 21 U.S.C. § 846 (2000), and was sentenced to a term of seventy-eight months imprisonment. His son, Greg Lambert, pled guilty to one count of distributing oxycodone in violation of 21 U.S.C. § 841 (2000), and was sentenced to a term of 108 months imprisonment. Both appeal their sentences. We affirm in part and dismiss in part.

During the period of the conspiracy, Greg lived with his parents. Greg's conviction was based on a monitored sale to a confidential informant, which took place at this residence. The residence was searched early on November 6, 2001, by federal and state investigators, who found ten firearms (three loaded) and a digital scale in a locked cabinet in the master bedroom, as well as a loaded handgun under the mattress in the master bedroom, and another loaded handgun in the living room on the mantel above the couch where Greg had been sleeping. Co-conspirators and drug customers of the Lamberts informed the government that both Greg and Steve sold drugs from their residence and guns were always in the house when drug transactions took place. In his interview with the probation officer, Greg stated that his father always carried a gun. Greg was initially released on bond pending trial, but his bond was revoked for continued drug use.

Steve disputes the weapon enhancement he received under *U.S. Sentencing Guidelines Manual* § 2D1.1(b)(1) (2001). Because he failed to raise the issue in the district court, it is reviewed for plain error. *United States v. Olano*, 507 U.S. 725, 732-37 (1993) (unpreserved error may be corrected only if error occurred, that was plain, and that affects substantial rights, and if failure to correct error would seriously affect the fairness, integrity, or public reputation of judicial proceedings); *United States v. McAllister*, 272 F.3d 228, 230 (4th Cir. 2001).

If firearms are present in a place where a drug conspiracy is carried out, the enhancement should be applied unless it is clearly improbable that the guns are connected to the offense. USSG § 2D1.1, comment. (n.3); *United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997). The district court had before it undisputed evidence that Steve kept loaded handguns in his bedroom and living room, as well as Greg's statement that his father always carried a gun. This information was sufficient for the court to infer that it was not clearly improbable that the firearms were connected to the drug offense. No plain error occurred.

Steve also claims that the district court erred in finding that he did not qualify for the safety valve reduction pursuant to USSG § 2D1.1(b)(6) and USSG § 5C1.2. A defendant must meet five criteria to qualify for the safety valve reduction, one of which is that he did not possess a firearm or other dangerous weapon in connection with the offense. USSG § 5C1.2(a)(2). Given that the district court properly determined that Steve possessed a firearm in connection with the offense, Steve could not meet the second criterion in § 5C1.2. Therefore, the district court correctly refused to apply the safety valve reduction.

Greg argues first that he was entitled to an adjustment for acceptance of responsibility. The district court's decision to deny an adjustment for acceptance of responsibility is reviewed for clear error. *United States v. Ruhe*, 191 F.3d 376, 379 (4th Cir. 1999). One of the factors the district court should consider is whether the defendant has voluntarily terminated or withdrawn from criminal conduct or associations. USSG § 3E1.1, comment. (n.1(b)). A district court may deny the adjustment because of criminal conduct, including drug use, while

on pretrial release. *United States v. Kidd*, 12 F.3d 30, 34 (4th Cir. 1993).

Greg concedes that his continued drug use weighed against the adjustment, but argues that other factors weighed more heavily in favor of granting it. These factors were his timely guilty plea and subsequent cooperation,* as well as his mental retardation and psychological problems that contribute to his drug dependence. These factors were brought to the district court's attention at sentencing. We conclude that the district court did not clearly err in finding that Greg's continued drug use while on release indicated that he had not fully accepted responsibility for his criminal conduct.

Next, Greg contends that his offense level should have been reduced because he was a minor participant. A minor participant is one who is less culpable than most other participants. USSG § 3B1.2, comment. (n.5). The district court's determination concerning the defendant's role in the offense is a factual issue reviewed for clear error. *United States v. Perkins*, 108 F.3d 512, 518 (4th Cir. 1997).

In a drug conspiracy, a defendant who sells the drugs is not a minor participant. *United States v. Brooks*, 957 F.2d 1138, 1149 (4th Cir. 1992). Greg pled guilty to distributing oxycodone. His conviction thus established that Greg had more than a minor role in the conspiracy. The district court did not clearly err in so finding.

Greg argues that the weapon enhancement should not have been applied in his case because he did not have access to most of the guns in the home, which were in a locked cabinet, and because the government failed to prove that the guns were connected with the illegal drug dealing. In addition, he asserts that the enhancement should not apply to him because of his mental deficiencies. As discussed above, the enhancement is properly made if firearms are present in a place where a drug conspiracy is carried out. *Harris*, 128 F.3d at 852. Moreover, there was evidence before the court that Greg understood

---

*Defense counsel acknowledged at sentencing that Greg had initially attempted to conceal or deny the extent of his and his family members' involvement in the drug conspiracy.

the wrongfulness of his actions. We conclude that the district court did not clearly err in making the enhancement in Greg's case.

Finally, Greg contends that a downward departure was warranted for a variety of reasons: his diminished capacity, his alleged minor role in the offense, his inability to function effectively in daily life, and his susceptibility to the influence of family members. Greg does not argue, and the record does not indicate, that the district court failed to understand its authority to depart. Therefore, the court's decision to forego a departure is not reviewable, *United States v. Carr*, 271 F.3d 172, 176-77 (4th Cir. 2001), and we dismiss this portion of the appeal.

We accordingly affirm the sentences but dismiss that portion of Greg's appeal that challenges the district court's decision not to depart. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART, DISMISSED IN PART*